SAMUEL FARLOW

*v.*

THE TOWN OF CAMP POINT.

*Opinion filed June 21, 1900.*

1. HIGHWAYS—*notice should show what part of road is claimed to be obstructed.* One charged with obstructing a highway is entitled to be advised, from the commissioners' notice, what part of the road he is charged with obstructing.

2. SAME—*when description of place obstructed becomes material.* Where highway commissioners particularly describe the location of the road obstructed, and nature of the obstruction, in their notice and complaint, such description becomes material and must be proved.

3. SAME—*when instructions in a road obstruction case are erroneous.* Instructions in a case for obstructing a road are erroneous which hold the defendant guilty if any part of his fence is in the road, where the written notice and complaint charge that the entire fence is an obstruction, and the plaintiff has attempted to prove such fact but has failed to prove the location of the road as described in such notice and complaint.

4. VARIANCE—*when question of variance is not waived by a failure to object.* A defendant in a road obstruction case does not waive his right to raise the question of variance between the proof and the written notice and complaint by not objecting at the trial, where he had no opportunity to do so, the plaintiff having attempted to prove the case made by the complaint, and claiming only in the instructions the right to recover upon less proof.

5. EVIDENCE—*hearsay evidence of defendant's guilt is not admissible.* Testimony by plaintiff's witness in a road obstruction case that he overheard the party who complained to the commissioners state that the defendant ought to be made to move his fence back as he was in the road, is not admissible where defendant was not present at such conversation.

APPEAL from the Circuit Court of Adams county; the Hon. JOHN C. BROADY, Judge, presiding.

C. A. BABCOCK, and HAMILTON & WOODS, for appellant.

GOVERT & PAPE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This suit was begun by appellee, against appellant, before a justice of the peace, by filing a complaint of the commissioners of highways of the town of Camp Point, charging appellant with obstructing a highway of said town and failing to remove the obstruction after he had been ordered by said commissioners to remove the same. After a change of venue to another justice of the peace there was a trial by jury, and appellant was found guilty and judgment was rendered against him. On appeal to the circuit court there was a verdict of guilty, and judgment was again rendered against him for $25 and costs.

The defendant owns the north-east quarter of section 27, in the town of Camp Point, and a public highway half a mile long runs north and south between said quarter and the north-west quarter. The dispute is as to the width of that road. On July 1, 1897, notice was served upon defendant reciting that there was an obstruction in said road, "consisting of a fence running the whole length of said quarter north and south and about seven or eight feet east of the west line of said quarter," and notifying him that unless he should remove the same within ninety days from the service of the notice the commissioners would proceed against him for the obstruction of a public highway. The complaint filed contained five paragraphs, in each of which the alleged obstruction was described as "a fence running the whole length of said quarter north and south and about seven or eight feet east of the west line of said quarter." The suit was commenced March 10, 1898.

The whole fence charged to be an obstruction was built of rails. The evidence for both parties at the trial was that the south 104 rods of the fence had remained in the same place that it stood at the time of the notice and trial, since the year 1863 or 1864, and that the remainder of the fence had stood in the same place since

the year 1884. About this there was no dispute. It was also an uncontroverted fact that prior to 1884 the fence from the north end of the south 104 rods to the north line of the quarter did not follow a direct line. Just north of the 104 rods there was a swale or low place, and when the fence was extended north there was a jog at this point and the fence deflected eastward six or eight feet around this low place, and from there north the fence was crooked, running at varying distances a few feet eastward from a direct line with the south 104 rods. In 1884 the entire fence was re-built, the south 104 rods on the same line where it had previously been and the fence north was straightened and brought into line with said south portion. The only controversy as to the location of any part of the fence at any time was whether the south 104 rods was set over to the west in 1863 or 1864.

The history of the road as shown at the trial is as follows: It was never laid out as a public highway. When the north-west quarter was unenclosed there had been a road running diagonally across it from the south-west to the north-east, called the Columbus-Pulaski road. This old road was closed up in 1848 or 1849, and fences were built so as to leave a lane open between these two quarters, running from the south northward, and the road in question began to be used. The land owned by defendant was then owned by his father, William Farlow, and the fence on that land ran north from the south line 104 rods. The fence on the other side of the lane did not extend quite so far north. About that time some work was done in the low place about the north end of this fence, but the evidence did not show where the travel went north of that low place. William Farlow died in 1858, and in the partition of his estate the part so fenced was set off to his widow. In 1863 or 1864 her son, George Farlow, a brother of defendant, re-built this fence. Two witnesses for the plaintiff, who lived on the other side of the road, testified that the fence was then set out ten or twelve

feet into what had been the láne and which is claimed to have been a public road. George Farlow, who built the fence, and his brother, the defendant, testified that it was laid in the same worm or line as the old fence, and that all that was done was to re-lay the fence in the same worm, with new rails in the bottom and new chunks under the intersections. This fence has remained in the same place ever since. The forty-two acres in the northwest corner of the north-east quarter, lying north of the enclosed land set off to the widow, was assigned to George Farlow. He went into the army in July, 1861, and remained eleven months. During that time his brother extended the rail fence northward 38 or 40 rods. At the starting point the jog or deflection to the east was made for the apparent purpose of avoiding laying the fence through the mud, and from there on north it was in an irregular line, varying a few feet one way or the other, without any apparent design or attempt to follow a particular line. The fence was built without the direction or knowledge of the owner, George Farlow, and he testified that when he came home he found it and just let it stand where it was, supposing it was intended as an extension of the other fence. Afterward, in 1866, he continued the same kind of a fence up to the north line.

The claim of the plaintiff is that the entire fence is an obstruction of a public highway; that the south 104 rods was obstructed in 1863 or 1864 by setting the fence out, and the obstruction has remained there ever since, and that the north part was obstructed in 1884, when the crooked line was straightened out and the north part of the fence put in line with the south part. It is contended that the land where this fence was put was a highway throughout its entire length, both by prescription and dedication, and instructions were given to the jury upon each of those theories.

It will be seen from the undisputed facts that there was no highway by prescription, either where the south

104 rods of the fence was located or at the north end, where the fence was first built and the land enclosed in 1866. According to the evidence for the plaintiff the road had not been in existence and there was no user of it twenty years before the south 104 rods of the fence was re-set, in 1863 or 1864, so that there was no highway by prescription when the alleged obstruction was made. If there was a highway there at all it was created by dedication. According to the evidence for the defendant the fence has always stood in the same place where it was built in 1848 or 1849, and there was never any user at the place claimed to be obstructed. The north end was not enclosed until 1866, and the evidence does not show where the travel went before that time. There is nothing in the record to show whether there were connecting roads north of this or where they ran. At any rate, if there was any use of the land it was merely passive, and not sufficient to show claim of right on the part of the public or to establish a right by prescription. *Town of Brushy Mound* v. *McClintock,* 150 Ill. 129.

The fifth instruction given at the request of plaintiff was on the subject of prescription, and was as follows:

"The court instructs the jury that if they believe, from the evidence in the case, that the road testified to by the witnesses had, immediately prior to and up to the year 1884, been continuously and uninterruptedly used for twenty years or more as a public road, adversely, under claim of right, by the public, for the full width of the space between the fences, if any, as they were prior to said year located, and that such use was with the knowledge and acquiescence of the owners of the land adjoining said road, then the law presumes a grant or dedication of the ground so occupied by the public to the use of the public for a public road, and in such case the said road, for the full width of the space between the fences, if any, as they were located prior to said year 1884, should be found by the jury to have been, immediately prior to

and up to said year 1884, a public road established by prescription."

Inasmuch as there was no evidence tending to prove that the public had used the disputed portion where the south 104 rods of the fence stood, at any time for twenty years, but even the evidence for the plaintiff showed that they had not, the instruction should not have been given. Furthermore, there was no evidence that the public had used the north portion, where the fence was built in 1866, for twenty years before 1884, and as to that part the instruction was not based upon any evidence.

The sixth instruction given at the request of plaintiff was as follows:

"The court instructs the jury that if they believe, from the evidence in the case, that the road testified to by the witnesses was from 1863, and thereafter for more than twenty years, fenced on both sides and was used and traveled by the public without interference by the abutting owners, and that during said period of twenty years such use by the public was adverse, under claim of right, continuous and uninterrupted, and that during said period the right of the public to use the road at all times and for any purpose was not called in question, and that the owners of the land on each side of the road had knowledge of such use of it by the public and acquiesced in such use for the period of twenty years above named, and that the line of travel was, during said period, for the width of the road between such fences, then the court instructs the jury that they should find that at the expiration of said period of twenty years said road, for the width of the same between such fences, became and was a public road by prescription."

This instruction, too, was not based on the evidence. There was no evidence whatever that the road was fenced from 1863 for more than twenty years, but plaintiff proved that the fence was not extended to the north line until 1866, and also proved that the disputed portion,

where the south 104 rods of fence is located, was not used or traveled by the public at all after 1863 or 1864. The plaintiff's two witnesses testified that the fence was re-set in 1863 or 1864, so as to prevent any travel there.

As before stated, there was a direct conflict in the testimony as to whether the south 104 rods of the fence was set out from the old line when it was re-built, in 1863 or 1864, two witnesses testifying for the plaintiff that it was so set out and two for the defendant that it was set in the same place as before. The jury were called upon to decide that question, and any error in the admission of evidence respecting it was necessarily of grave importance to the parties. It was about the only disputed fact in the case. The land on the opposite side of the road was owned by R. L. Booth, and on the cross-examination of the town clerk defendant's counsel asked the witness who made the complaint to the commissioners on which the prosecution was commenced, and the witness answered that the complaint was made by R. L. Booth. On re-direct examination the plaintiff's counsel asked the witness what Booth said when he made the complaint. Defendant's objection was overruled and the witness was permitted to state that Booth said the defendant ought to be made to move his fence back, and that defendant was further in the road than he was. The defendant was not present, and it was error to admit to the jury the statement of Booth as to the merits of the case. The admission of hearsay evidence that the defendant was guilty was wrong, and must necessarily have been prejudicial.

If the evidence for the defendant was true and the south 104 rods of the fence was in the place where it was originally built when the lane was opened, the defendant could not be required to remove it, and as to that part of the road had committed no offense. The instructions given for plaintiff authorized the jury to find him guilty of the charge made against him, of failing to remove the

obstruction after notice, if any part of the fence through-
out its whole length was in the public highway. Under
the instructions the jury might find the defendant guilty
although they believed his evidence as to the south 104
rods, and also believed that there was no highway where
the fence built in 1866 was re-set at the north end, if they,
should believe that the portion of the fence built in 1861
or 1862, from the jog northward, constituted an unlawful
obstruction when moved on the straight line in 1884. The
jury were told that if defendant had moved any part of
the fence within the limits of the public road, and had
been notified to remove said fence by the commissioners
of highways and had failed to do so, plaintiff was en-
titled to recover. The notice served described the fence
as running the whole length of the quarter section. It
required him to remove the whole fence, and the writ-
ten complaint charged that the obstruction consisted of
the whole fence, but the instructions directed a verdict
against him if any part of the fence was in the public
road. The party charged with obstructing a road is en-
titled to understand from the notice what place he is
charged with having obstructed, so that he may ascer-
tain what his rights are. (*Ferris* v. *Ward*, 4 Gilm. 499.)
In this case the parties saw fit to give a written notice
and to file a written complaint. The description in the
notice and complaint was not a general description of a
road charged to be obstructed, but they particularly de-
scribed the part of the road obstructed and the nature of
the obstruction, and the description was material. *Mar-
tin* v. *People*, 23 Ill. 395; *Town of Lewiston* v. *Proctor*, 27 id.
414; *Houston* v. *People*, 63 id. 185.

It is argued that defendant should have raised the
question of variance of the proof from the notice and
complaint in the trial court, and that he cannot raise the
objection here that the evidence only tended to prove
that a small part of his fence was in the road. There
was no time or place when he could have raised that

question in the trial court. The plaintiff endeavored to prove the complaint as made and that the entire fence constituted an obstruction. It was only in the instructions that the jury were authorized to find the defendant guilty although the complaint was not proved as made. The plaintiff having made a complaint in writing giving a particular description of the obstruction and the place obstructed, was bound to prove it.

For the errors indicated the judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*